IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: § § § § § § § §<br>GERALDINE ROBINSON, <br>Debtor. <br>CENTRAL MORTGAGE COMPANY, <br>Movant, <br>vs. <br>GERALDINE ROBINSON and <br>JANET G. WATTS, Chapter 7 Trustee, <br>Respondents. | Chapter 7 <br><br>Case No. 11-63349-JRS |

## NOTICE OF ASSIGNMENT OF HEARING

NOTICE IS HEREBY GIVEN that a Motion for Relief from the Automatic Stay has been filed in the above-styled case. In the event a hearing cannot be held within thirty (30) days from the filing of the Motion for Relief From the Automatic Stay as required by 11 U.S.C. §362, Movant, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below. The undersigned consents to the automatic stay (and any related co-debtor stay) remaining in effect with respect to Movant until the Court orders otherwise.

**PLEASE TAKE FURTHER NOTICE THAT THE COURT WILL HOLD A HEARING ON THE MOTION FOR RELIEF FROM AUTOMATIC STAY IN <u>COURTROOM 1404</u>, AT THE U.S. COURTHOUSE, U.S. COURTHOUSE, 75 SPRING STREET, ATLANTA, GEORGIA, AT <u>1:30 P.M.</u> ON <u>JUNE 14, 2011.</u>**

Within three (3) days of the date of this notice, Movant's attorney, or a pro se Movant, shall serve this Motion and this notice upon the Debtor(s), Trustee and their attorneys of record, and shall file a certificate of service within three (3) days of service. BLR 90070-2NDGa.

At Savannah, Georgia, this ___ day of June, 2011.

s/ _____
David W. Adams
State Bar No. 000098
Attorney for Movant

ELLIS, PAINTER, RATTERREE & ADAMS LLP
Post Office Box 9946
Savannah, Georgia 31412
(912) 233-9700

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| GERALDINE ROBINSON, | § § | Chapter 7 |
| Debtor. | § § § | Case No. 11-63349-JRS |
| CENTRAL MORTGAGE COMPANY, | § § | |
| Movant, | § § | |
| vs. | § § | |
| GERALDINE ROBINSON and JANET G. WATTS, Chapter 7 Trustee, | § § § | |
| Respondents. | § | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW Central Mortgage Company, ("Movant") the holder of a secured claim in the above-styled case, and respectfully shows the Court the following:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334, §157, 11 U.S.C. §362 and §506(b).

2.

On or about May 14, 2003, Geraldine Robinson ("Debtor") executed a Note ("Note") in favor of Taylor, Bean & Whitaker Mortgage Corp., in the principal amount of $252,000.00, plus interest accruing at the rate as provided for therein. A true and correct copy of the Note is attached hereto as Exhibit "A".

3.

The indebtedness evidenced by the Note is secured by that certain Security Deed, dated May 14, 2003 ("Security Deed"), executed by Debtor in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Taylor, Bean & Whitaker Mortgage Corp. and describing real property known as 882 Winfield Avenue,

Atlanta, Georgia 30316 ("Real Property"). A true and correct copy of the Security Deed is attached hereto as Exhibit "B".

4.

On or about May 2, 2011, Debtor filed a petition for relief under Chapter 7 of Title 11 of the United States Code.

5.

Movant is the current holder/servicer of the Note and Security Deed and is therefore the holder of a secured claim in the approximate amount $176,006.29.

6.

Movant is entitled to relief from the automatic stays entered on behalf of the Debtor and in that there is little, if any, equity in the Real Property and it is not necessary to an effective reorganization by the Debtor.

7.

Movant is further entitled to relief from the automatic stays entered on behalf of Debtor in that Movant is not adequately protected in this case. Currently, Debtor is in arrears on the payments to Movant in the approximate amount of $18,999.57, plus late charges and attorney's fees and costs. If not permitted to take possession of its Real Property and dispose of same, and further proceed immediately with its applicable remedies under applicable non-bankruptcy law to gain physical possession thereof, Movant will suffer irreparable injury, loss and damage.

8.

Movant is further entitled to immediate relief based on a finding that the ten (10) day stay period provided for under Bankruptcy Rule 4001 (a)(3) does not apply.

WHEREFORE, Movant, respectfully prays that upon final consideration of this Motion:

1. That this Court terminate or modify all stays entered pursuant to 11 U.S.C. § 362 to permit Movant to pursue its remedies under the Note and Security Deed with respect to the Real Property, including initiation of non-judicial proceedings with respect to some and any lawful action to gain physical possession of same.

2. That this Court expressly provide said relief not be stayed as provided for under Bankruptcy Rule 4001 (a)(3);

3. That Movant have such other and further relief as this Court deems just and proper.

This __2__ day of June, 2011.

                                                               /s/
                                                       David W. Adams
                                                       State Bar No. 002860
                                                       Drew K. Stutzman
                                                       State Bar No. 000098
                                                       Attorney for Movant

ELLIS, PAINTER, RATTERREE, & ADAMS LLP
Post Office Box 9946
Savannah, Georgia 31412
(912) 233-9700

TRUE AND CERTIFIED COPY
OF AN ORIGINAL DOCUMENT

# NOTE

May 14, 2003                     ATLANTA                         Georgia
[Date]                            [City]                          [State]

882 WINFIELD AVE.
ATLANTA, GA 30316
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

    In return for a loan that I have received, I promise to pay U.S. $252,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Taylor, Bean & Whitaker Mortgage Corp.**

    I will make all payments under this Note in the form of cash, check or money order.

    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.5000%.

    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

    (A)  Time and Place of Payments

    I will pay principal and interest by making a payment every month.

    I will make my monthly payment on the    **1st**   day of each month beginning on   **July 01, 2003**.
    I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 01, 2033**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

    I will make my monthly payments at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL  34475**
    or at a different place if required by the Note Holder.

    (B)  Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $1,430.83

4. **BORROWER'S RIGHT TO PREPAY**

    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
ITEM T1646L1 (0011)                       (Page 1 of 3 pages)                     GREATLAND ■
                                                                     To Order Call 1-800-530-9393 □ Fax 616-791-1131

**\*23030392587\***

*23030392587*

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

    (A) Late Charge for Overdue Payments

    If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    (B) Default

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (C) Notice of Default

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D) No Waiver By Note Holder

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E) Payment of Note Holder's Costs and Expenses

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
ITEM T1646L2 (0011)    (Page 2 of 3 pages)    GREATLAND ®
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

**GERALDINE ROBINSON** _____ (Seal)   _____ (Seal)
                                      -Borrower                       -Borrower

_/s/ Geraldine Rob_____ (Seal)   _____ (Seal)
                                      -Borrower                       -Borrower

_____ (Seal)   _____ (Seal)
                                      -Borrower                       -Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
ITEM T1846L3 (0011)                      (Page 3 of 3 pages)                      GREATLAND ■
                                                                     To Order Call: 1-800-530-9393 □ Fax 616-791-1131

Deed Book 14684 Pg 329
Filed and Recorded Jun-02-2003 11:56am
2003-0097698
Georgia Intangible Tax Paid $756.00



Linda Carter
Clerk of Superior Court Dekalb Cty. Ga.

After Recording Return To:
LAKE & ASSOCIATES
5825 GLENRIDGE DRIVE, STE 212 B-162
ATLANTA, GA  30328

LAKE & ASSOCIATES, PC
5825 GLENRIDGE DRIVE
BLDG. 2, SUITE 212
ATLANTA, GEORGIA  30328

[Space Above This Line For Recording Data]

# SECURITY DEED

MIN: 100029500003925876

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **May 14, 2003**, together with all Riders to this document.

(B) "Borrower" is  GERALDINE ROBINSON

Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Taylor, Bean & Whitaker Mortgage Corp.
Lender is a  Florida Corporation                              organized and existing under
the laws of  FL                              . Lender's address is
1417 North Magnolia Ave, Ocala, FL  34475

(E) "Note" means the promissory note signed by Borrower and dated **May 14, 2003**. The Note states that Borrower owes Lender Two Hundred Fifty Two Thousand and no/100
Dollars (U.S. $252,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 01, 2033**.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA—Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3011 1/01
                                                                                    GREATLAND ■
ITEM T9879L1 (0011)—MERS               (Page 1 of 12 pages)       To Order Call: 1-800-530-9393 □ Fax 616-791-1131

**\*024066392587\***

*024066392587*

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

County of Fulton  
[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART THEREOF

which currently has the address of   882 WINFIELD AVE.
[Street]

ATLANTA , Georgia   30316   ("Property Address");
[City]   [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
GREATLAND ®
ITEM T9879L3 (0011)—MERS   *(Page 3 of 12 pages)*   To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____   _____(Seal)
Unofficial Witness                 GERALDINE ROBINSON              -Borrower

_____
                                   _____(Seal)
                                                                   -Borrower

Notary Public,                County

My commission expires:
                                   _____(Seal)
                                                                   -Borrower

                                   _____(Seal)
                                                                   -Borrower

                                   _____(Seal)
                                                                   -Borrower

                                   _____(Seal)
                                                                   -Borrower

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF ATLANTA IN LAND LOT 146 OF THE 15TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8 OF BLOCK 2 OF THE SUBDIVISION OF GUSTAVE KAGELMACHER ESTATE, AS PER PLAT BY C.H. FAULKNER, C.E., JULY 18, 1920, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT ON THE EAST SIDE OF WINFIELD AVENUE, 141 FEET SOUTH FROM THE SOUTHEAST CORNER OF WINFIELD AVENUE AND FLAT SHOALS ROAD AND RUNNING THENCE SOUTH ALONG THE EAST SIDE OF WINFIELD AVENUE 60 FEET TO LOT 9, 200 FEET TO THE SOUTHWEST CORNER OF LOT 32; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF LOT 32, 50 FEET TO THE SOUTHEAST CORNER OF LOT 3; THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINES OF LOTS 3,4,5,6 AND 7, 228 FEET TO WINFIELD AVENUE, SE, ATLANTA, GEORGIA, AND THE POINT OF BEGINNING, AND BEING UNIMPROVED PROPERTY KNOWN AS NO. 882 WINFIELD AVENUE, S.E., ATLANTA, GEORGIA.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | § § | Chapter 7 |
| GERALDINE ROBINSON, | § § | Case No. 11-63349-JRS |
| Debtor. | § § | |
| CENTRAL MORTGAGE COMPANY, | § § | |
| Movant, | § § | |
| vs. | § § | |
| GERALDINE ROBINSON and JANET G. WATTS, Chapter 7 Trustee, | § § § | |
| Respondents. | § | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2011, I caused a true and correct copy of the *"Notice of Assignment of Hearing"* and the *"Motion for Relief from Automatic Stay"* filed in the above-styled matter to be served via the following methods: (1) via Notice of Electronic Filing to those parties listed below who are registered participants of the Electronic Case Filing System; and (2) via United States First Class Mail, with adequate postage affixed, addressed to those parties listed below who are not registered participants of the Electronic Case Filing System:

**Geraldine Robinson, Pro Se, 882 Winfield Avenue, Atlanta, GA 30316**

**Janet G. Watts, Esq., Chapter 7 Trustee, 600 North Glynn Street, Suite C, Fayetteville, GA 30214**

**U.S. Trustee, 362 Richard Russell Building, 75 Spring Street, SW, Atlanta, GA 30303**

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

This 2 day of June, 2011.

                                                  s/
                                                  David W. Adams
                                                  State Bar No. 000098
                                                  Drew K. Stutzman
                                                  State Bar No. 000098